Michael K. RILEY, Sr., Nicollet County Attorney,
Respondent,

v.

1987 STATION WAGON, VIN: 1JCMT7840HTI07485 (Owner: Jerry Joseph Duwenhoegger), petitioner, Appellant.

No. C8–01–21.

Supreme Court of Minnesota.

Aug. 29, 2002.

Cathryn Middlebrook, Legal Assistant to Minnesota Prisoners, Minneapolis, MN, for Appellant.

Michael K. Riley, Sr., Nicollet County Attorney, Michelle M. Zehnder Fischer, Assistant County Attorney, St. Peter, MN, for Respondent.

## OPINION

PAGE, Justice.

Jerry Joseph Duwenhoegger, the owner of 1JCMT7840HTI07485 1987 Station Wagon (Jeep), was convicted of two counts of conspiracy to commit first-degree murder in violation of Minn.Stat. § 609.175, subd. 2(2) (2000). The Nicollet County Attorney, Michael K. Riley, Sr. (county), sought forfeiture of the Jeep pursuant to Minn.Stat. § 609.5312, subd. 1 (2000).[1] The district court ordered forfeiture of the Jeep and the court of appeals affirmed. For the reasons set forth below, we reverse.

In September 1998, Duwenhoegger enlisted an acquaintance, John Sullivan, to assist him in killing Jeffrey Shanks and Esther Meschke, respectively the son and mother of Duwenhoegger's girlfriend, Norine Shanks. Sullivan, who went to the police and became an informant, met with Duwenhoegger on four occasions in September 1998: September 17, September 18, September 20, and September 21. At each of these meetings, Duwenhoegger drove his Jeep to the meeting place, exited the Jeep, and entered Sullivan's vehicle, where the two made their plans.

The final meeting was a reconnaissance mission to get a sense of the layout of Meschke's house. On that occasion, Duwenhoegger brought with him in the Jeep a number of items, including a flashlight, a drill, a drill bit, a screwdriver, some wire, and gloves, all of which he planned to use to enter a basement window in Meschke's house. Using Sullivan's vehicle, Sullivan and Duwenhoegger drove to Meschke's house and, while Sullivan acted as lookout,

Duwenhoegger attempted to break in. The break-in was unsuccessful, and Duwenhoegger returned to the vehicle to rethink his plan. Sullivan later took Duwenhoegger back to his Jeep, where Duwenhoegger was arrested. Duwenhoegger was charged with and convicted of two counts of conspiracy to commit first-degree murder.

The county instituted this forfeiture proceeding pursuant to Minn.Stat. § 609.5312, subd. 1, and moved for summary judgment on the basis that Duwenhoegger used the Jeep to commit and facilitate the conspiracy to commit murder, a designated offense under the statute. Duwenhoegger also moved for summary judgment, contending that he did not use the Jeep as the county alleged. Duwenhoegger further contended that, on these facts, civil forfeiture of the Jeep would amount to a second punishment in violation of the Double Jeopardy Clauses of both the United States and Minnesota Constitutions.

The district court granted the county's motion for summary judgment and ordered forfeiture, concluding that Duwenhoegger had used the Jeep in furtherance of the conspiracy to commit the murders. In the memorandum supporting its forfeiture order, the district court stated: "The transporting of the tools by Mr. Duwenhoegger in [the Jeep] in preparation for entry into the proposed victim's home clearly constitutes use of [the Jeep] to facilitate the commission of the designated offense. Therefore, [the county] is entitled to summary judgment on this issue." The district court further concluded that there was no basis for Duwenhoegger's double

1. Minnesota Statutes § 609.5312, subdivision 1, provides:

    All personal property is subject to forfeiture if it was used or intended for use to commit or facilitate the commission of a designated offense. All money and other property, real and personal, that represent proceeds of a designated offense, and all contraband property, are subject to forfeiture, except as provided in this section.

jeopardy claim because the forfeiture in this case was "remedial" and not punitive.

In affirming the district court's decision, the court of appeals held:

> [T]he use of the vehicle to transport tools used to commit an overt act in furtherance of a conspiracy, and its use in transporting a conspirator to a site where he formulated the conspiracy plan with a co-conspirator, facilitated the crime and provided a sufficient nexus to warrant forfeiture of the vehicle.

*Riley v.1987 Station Wagon,* 634 N.W.2d 434, 437 (Minn.App.2001). Concerning Duwenhoegger's double jeopardy claim, the court of appeals held that "the forfeiture of a 14–year–old vehicle after a conviction for conspiracy to commit first-degree murder is not the type of forfeiture that is so punitive so as to constitute a second punishment."

### I.

■ Resolution of this appeal hinges on what the legislature meant by the language "used or intended for use to commit or facilitate the commission of a designated offense" as set out in Minn.Stat. § 609.5312, subd. 1. Statutory construction is subject to de novo review. *Blanche v. 1995 Pontiac Grand Prix (Vin: 162WJ12M95F268403),* 599 N.W.2d 161, 164 (Minn.1999). "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature. Every law shall be construed, if possible, to give effect to all its provisions." Minn.Stat. § 645.16 (2000); *see also Boutin v. LaFleur,* 591 N.W.2d 711, 715 (Minn.1999).

■ In Minnesota, an action for forfeiture is a civil *in rem* action. Minn.Stat.

§ 609.531, subd. 6a (2000). The property seized becomes the defendant based on the legal fiction that it is the inanimate object itself, not its possessor or owner, that is guilty of wrongdoing. *See Austin v. United States,* 509 U.S. 602, 615–17, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993); 37 C.J.S. *Forfeitures* § 2 (1997). According to Minn.Stat. § 609.531, subd. 1a (2000), Minnesota's forfeiture statutes are remedial in nature and are to be liberally construed. Yet, the United States Supreme Court has stated that "forfeiture generally and statutory *in rem* forfeiture in particular historically have been understood, at least in part, as punishment." *Austin,* 509 U.S. at 618, 113 S.Ct. 2801. The Court has also stated that "[f]orfeitures are not favored; they should be enforced only when within both letter and spirit of the law." *United States v. One 1936 Model Ford V–8 De Luxe Coach, Motor No. 18–3306511,* 307 U.S. 219, 226, 59 S.Ct. 861, 83 L.Ed. 1249 (1939). Accordingly, to the extent that the forfeiture law at issue here is, in part, "punishment" and, therefore, disfavored generally, we strictly construe its language and resolve any doubt in favor of the party challenging it. *See State v. Olson,* 325 N.W.2d 13, 19 (Minn.1982); *State v. Haas,* 280 Minn. 197, 200–01, 159 N.W.2d 118, 121 (1968).

### II.

■ Duwenhoegger argues that, under a plain reading of Minn.Stat. § 609.5312, subd. 1, his Jeep was not used to commit or facilitate the conspiracy to commit the murders.[2] He argues that the conduct of driving the Jeep to the four meetings with Sullivan and carrying items in the Jeep that were ultimately placed in Sullivan's

---

**2.** Duwenhoegger does not argue in his brief to this court that forfeiture of the Jeep violates the Double Jeopardy Clause of either the United States or Minnesota Constitutions.

Therefore, we deem the argument waived. *State v. Grecinger,* 569 N.W.2d 189, 193 n. 8 (Minn.1997); *Balder v. Haley,* 399 N.W.2d 77, 80 (Minn.1987).

vehicle and used to attempt the break-in did not create a sufficient nexus between the Jeep and the designated offense.

In response, the state argues that, under a broad interpretation of section 609.5312, subdivision 1, a vehicle used to transport a conspirator to meetings with another conspirator, to transport items used to commit an overt act in furtherance of the conspiracy, and to provide cover and diversion for the vehicle owner's illegal conduct facilitates the conspiracy and therefore is subject to forfeiture under the statute.[3] According to the state, the seized property need not have been an integral or an essential component of the crime.

Before 1988, Minnesota had one forfeiture statute, Minn.Stat. § 609.531 (1986). Subdivision 2(a) of that statute provided that certain property "associated with the commission or utilized in the commission of a designated offense * * * shall be subject to forfeiture." Minn.Stat. § 609.531, subd. 2(a) (1986). In 1988, the legislature amended section 609.531 and repealed subdivision 2, replacing it with Minn.Stat. §§ 609.5311 and 609.5312 (1988). Act of Apr. 26, 1988, ch. 665, §§ 5–17, 1988 Minn. Laws. 941, 942–951. The current version of section 609.5311 deals with forfeitures of property connected to controlled substance offenses and applies to "[a]ll property, real and personal, that * * * has in any way facilitated, in whole or in part," certain controlled substance offenses. Minn.Stat. § 609.5311, subd. 2 (2000). The current version of section 609.5312 deals with forfeiture relating to certain designated offenses and applies to all property "used or intended for use to commit or facilitate the commission of" certain designated offenses. Minn.Stat. § 609.5312, subd. 1. Here, the legislature did not precede the term "facilitate" in section 609.5312 with

phrases such as "in any way" or "in whole or in part," as it did in section 609.5311.

While we do not opine as to the significance of such modifying language as in any way, we note that, in some jurisdictions, courts have held that with such express statutory language, even the slightest connection between a vehicle and criminal activity, such as transportation to the scene of criminal activity, may subject the vehicle in question to forfeiture. *See, e.g., United States v. 1990 Toyota 4Runner*, 9 F.3d 651, 652–54 (7th Cir.1993); *United States v.1964 Beechcraft Baron Aircraft, TC–740, FAA Reg., No. N444CP, Actual No. N914C*, 691 F.2d 725, 728 (5th Cir. 1982) (per curiam); *United States v. One 1974 Cadillac Eldorado Sedan, Serial No. 6L47S4Q407966*, 548 F.2d 421, 422–27 (2d Cir.1977).

Mirroring this approach, some courts have declined to hold that transportation to the scene of criminal activity is sufficient to subject the vehicle to forfeiture, absent such modifying language. *See, e.g., United States v. Lane Motor Co.*, 344 U.S. 630, 630–31, 73 S.Ct. 459, 97 L.Ed. 622 (1953) (per curiam); *Howard v. United States*, 423 F.2d 1102, 1103–04 (9th Cir. 1970); *Simpson v. United States*, 272 F.2d 229, 230–31 (9th Cir.1959); *Platt v. United States*, 163 F.2d 165, 166–67 (10th Cir. 1947).

Indeed, even when language equivalent to "in any way" has modified the term "facilitate," some courts have interpreted that language to require at least a "substantial connection" between seized property and criminal activity. *See, e.g., United States v. One 1976 Ford F–150 Pick–Up VIN F14YUB03797*, 769 F.2d 525, 527 (8th Cir.1985) (per curiam) (holding that vehicle was not "substantially associated" with

---

**3.** As noted above, we decline to apply a broad interpretation to section 609.5312, subdivision 1, but rather strictly construe it based on its quasi-penal character.

criminal activity and, therefore, that forfeiture was not authorized when vehicle was observed only on one occasion visiting and inspecting marijuana crop). Such reasoning seems to avoid attenuated and even absurd results that would flow from an application of the language "in any way facilitate."

■ With respect to vehicular conveyances in particular, "common sense dictates that the law require a substantially significant connection with criminal activity before an ordinary automobile may be seized and forfeited to the Government." *United States v. One 1972 Datsun Vehicle Identification No. LB1100355950*, 378 F.Supp. 1200, 1206 (D.N.H.1974). The reason is that the use of the automobile in our society is pervasive. *Id.* A car by itself is not contraband and there is little activity that the use of a car does not "facilitate" to some degree. *Id.* With respect to vehicular conveyances, we hold that the term "facilitate," as used in section 609.5312, subdivision 1, requires a direct and substantial connection between the vehicle being forfeited and the designated offense.

In this case, the sole connection between the Jeep and the criminal activity was the transportation of Duwenhoegger and, at one point, Duwenhoegger and his tools, to the meeting place with Sullivan.[4] At no point did any of the conspiring acts occur in the Jeep. At all times, the Jeep was one vehicle removed from facilitating the commission of conspiracy and, thus, was not directly involved in the commission of the designated offense. As such, we hold that the connection between the Jeep and the conspiracy was neither direct nor substantial; that, as a result, the Jeep was neither a "tool" nor an "instrument" of the conspiracy; and, therefore, that the Jeep is not subject to forfeiture.

Reversed.

MEYER, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

4. On these facts, we note that the tools could have been subject to forfeiture. As section 609.5312, subdivision 1, requires, the tools were intended for use and ultimately used in the commission of a designated offense.