Debra Jane MILLER, Appellant,

v.

ONE 2001 PONTIAC AZTEK, # GHS-186, VIN: 3G7DA03E41S500032, Defendant,

City of Bloomington, Respondent.

No. C8–02–613.

Supreme Court of Minnesota.

Oct. 16, 2003.

Leonard Castro, Chief Fourth District Public Defender, Barbara S. Isaacman, Assistant Hennepin County Public Defender, Minneapolis, MN, for Appellant.

Sandra Henkels Johnson, Associate Bloomington City Attorney, Bloomington, MN, for Respondent.

## OPINION

GILBERT, Justice.

The facts in this case are undisputed. On June 6, 2001, in the City of Bloomington, Debra Jane Miller, appellant, was arrested for gross misdemeanor driving while impaired (DWI) pursuant to Minn. Stat. § 169A.20, subd. 1(5) (2000). Approximately 7 months earlier, on November 16, 2000, appellant was arrested for gross misdemeanor DWI, having a blood-alcohol content (BAC) of .26. On January 25, 2001, appellant was convicted of the first offense and, on July 11, 2001, appellant was convicted of the second DWI offense.

Appellant's second DWI conviction qualified as a "first-degree" conviction. A person is guilty of first-degree DWI if "two or more aggravating factors" are present. Minn.Stat. § 169A.25, subd. 1 (2000)[1]. Aggravating factors include a second DWI conviction within a 10–year span and with a BAC higher than .20. Minn.Stat. § 169A.03, subd. 3 (2000). Appellant's first-degree DWI constituted a "designated offense," which qualified appellant's vehicle for forfeiture. *See* Minn.Stat. § 169A.63, subd. 1(d)(1) (2000) (stating that "designated offense" includes a violation of section 169A.20, driving while impaired, under circumstances described in section 169A.25, first-degree driving while impaired), Minn.Stat. § 169A.63, subd. 2 (2000) (providing for seizure of motor vehicle involved in designated offense).

Appellant filed a demand for judicial determination per Minn.Stat. § 169A.63, subd. 8 (2000). The City of Bloomington moved for summary judgment. The district court denied the City's motion for summary judgment and ordered an evidentiary hearing. At appellant's January 14, 2002, forfeiture hearing, she provided her financial information. She testified that she was laid off from her employment in September 2000, and received a severance package worth $79,200, of which she spent $16,000 on the 2001 Pontiac Aztek that was subject to forfeiture. Appellant remained unemployed and collected state unemployment benefits. Appellant had no dependents, but argued that she would be severely restricted without the proceeds of her automobile forfeiture.

After the hearing, the district court held that, due to appellant's financial condition, any forfeiture of appellant's vehicle exceeding $1,000 would violate the Excessive Fines Clauses of the United States and Minnesota Constitutions. It ordered the City to sell appellant's vehicle, waive any

---

1. With the adoption of the felony DWI, Minn. Stat. § 169A.24 (2002), violations of Minn. Stat. § 169A.25 became titled a "Second Degree DWI," effective August 1, 2002.

storage fees, keep $1,000, and remit all remaining funds back to appellant.

The court of appeals reversed the district court's decision. It held that the district court erred in considering appellant's personal financial situation. After applying a gross disproportionality test, the court of appeals determined that the forfeiture was not excessive. It remanded with instructions to order the vehicle forfeited pursuant to Minn.Stat. § 169A.63. We affirm.

## I.

Cases involving the constitutionality of a statute are questions of law which we review de novo. *State v. Rewitzer,* 617 N.W.2d 407, 412 (Minn.2000); *Matter of Blilie,* 494 N.W.2d 877, 881 (Minn.1993); *State Farm Ins. Cos. v. Seefeld,* 481 N.W.2d 62, 64 (Minn.1992).

The United States and Minnesota Constitutions both protect individuals from excessive fines. *See* U.S. Const. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."); Minn. Const. art. I § 5 ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."). We have previously stated that "[a] large discretion is necessarily vested in the legislature to impose penalties sufficient to prevent the commission of an offense, and it would have to be an extreme case to warrant the courts in holding that the constitutional limit has been transcended." *State v. Rodman,* 58 Minn. 393, 59 N.W. 1098, 1100 (1894).

The United States Supreme Court extensively explored the Excessive Fines Clause pertaining to a forfeiture in *United States v. Bajakajian,* 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998). In *Bajakajian,* customs officers stopped the defendant as he attempted to leave the United States. The customs officers found $357,144 in currency and confiscated it. *Id.* at 324, 118 S.Ct. 2028. Bajakajian was charged with one count of violating 18 U.S.C. § 5316(a)(1)(A) (1994), requiring travelers to declare their belongings if they are transporting more than $10,000 from the United States. 524 U.S. at 325, 118 S.Ct. 2028. If a person is in violation of the statute, a court has discretion to order that person to "forfeit to the United States any property, real or personal, involved in such offense * * *." 18 U.S.C. § 982(a)(1) (1994).

Relying on the Cruel and Unusual Punishments Clause of the Eighth Amendment, the Supreme Court adopted a standard of gross disproportionality articulated in *Solem v. Helm,* 463 U.S. 277, 288, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). Specifically, the Supreme Court held that a fine is unconstitutional if it is grossly disproportional to the gravity of the offense. *Bajakajian,* 524 U.S. at 344, 118 S.Ct. 2028.

To determine proportionality, the Supreme Court in *Solem* utilized three factors: 1) the gravity of the offense and the harshness of the penalty; 2) a comparison of the contested fine with fines imposed for the commission of the other crimes in the same jurisdiction; and 3) comparison of the contested fine with fines imposed for commission of the same crime in other jurisdictions. *Solem,* 463 U.S. at 290–91, 103 S.Ct. 3001. Applying the *Solem* test to Bajakajian, the Supreme Court held that the forfeiture of Bajakajian's money would violate the Excessive Fines Clause. *Bajakajian,* 524 U.S. at 344, 118 S.Ct. 2028.

We first substantially applied the Excessive Fines Clause to Minnesota statutes in *Rewitzer,* 617 N.W.2d at 412. In *Rewitzer,* we were asked whether postconviction

fines and surcharges totaling $273,600 amounted to an unconstitutionally excessive fine. Similar to the United States Supreme Court in *Bajakajian*, we adopted the three-part test established in *Solem* for evaluating the constitutionality of a fine under the Excessive Fines Clause. The fines in *Rewitzer* were levied against the defendant for selling drugs with a street value of less than $200. *Id.* at 414 n. 4.

Applying the "gross disproportionality" standard found in *Solem* and *Bajakajian*, along with the three-part test articulated in *Solem* and relied on in *Bajakajian*, we held that: (1) the punishment was largely disproportional to the crime, as the fine was grossly larger (1,368 times) than the value of the drugs and the severity of the offense; (2) the fines imposed on Rewitzer were substantially higher than the fines authorized for other similarly ranked offenses; and (3) Rewitzer's fine far exceeded the recommended fine for a similar offense under the Federal Sentencing Guidelines ($273,600 versus $500–$5,000). *Rewitzer*, 617 N.W.2d at 414–15.

We have previously validated the practice of vehicle forfeitures as long as a sufficient nexus exists between the crime and the vehicle. In *Riley v.1987 Station Wagon*, 650 N.W.2d 441 (Minn.2002), the district court ordered the forfeiture of a motor vehicle after the owner was convicted of two counts of conspiracy to commit first-degree murder. The court ordered forfeiture on the basis that the vehicle had been used in furtherance of the conspiracy to commit the murder. We held that "in Minnesota, an action for forfeiture is a civil *in rem* action. The property seized becomes the defendant based on the legal fiction that it is the inanimate object itself, not its possessor or owner, that is guilty of wrongdoing." *Id.* at 443 (citations omitted). Because the sole connection between the vehicle and criminal activity in *Riley* was a remote transportation of the criminal, we held that a sufficient nexus did not exist to warrant a forfeiture. *Id.* at 445; *see* Minn.Stat. § 609.531, subd. 6a (2002).

According to *Riley*, "common sense dictates that the law requires a substantially significant connection with criminal activity before an ordinary automobile may be seized and forfeited to the Government." *Riley*, 650 N.W.2d at 445 (citations omitted). In contrast to *Riley*, the vehicle in the present case was clearly and directly involved with appellant's drunken driving. The use of a vehicle in a first-degree DWI offense is a necessary prerequisite of the forfeiture statute. The question appellant raises does not revolve around appellant's guilt, or the vehicle's nexus to that guilt, but rather the degree that appellant will be harmed by her punishment.

The City first asks us to depart from the *Solem* test, arguing that *in rem* vehicle forfeitures should be judged purely based on an "instrumentality" inquiry.[2]

---

**2.** To support the "instrumentality" argument, the City cites to Justice Antonin Scalia's concurrence in *Austin v. United States*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) (Scalia, J. concurring), a case decided prior to *Bajakajian*. In Justice Scalia's concurrence, he suggested that the sole measure of an *in rem* forfeiture's excessiveness should be the "instrumentality" of the property being forfeited. *Id.* at 625–28, 113 S.Ct. 2801. The United States Supreme Court has never adopted this suggestion. However, in a footnote, the majority in *Austin* directly responded to Justice Scalia's suggestion by pointing out that "[w]e do not rule out the possibility that the connection between the property and the offense may be relevant, but our decision today in no way limits the Court of Appeals from considering other factors in determining whether the forfeiture of Austin's property was excessive." *Id.* at 623 n. 15, 113 S.Ct. 2801. The Supreme Court in *Bajakajian* refused to address the issue of "instrumentality." Minnesota state courts have never applied a sole "instrumentality" test, and the

We decline to depart from the *Solem* test in the present matter and therefore apply the three *Solem* factors to the facts of this case.

The first *Solem* factor examines the gravity of the offense and the harshness of the penalty. *Solem*, 463 U.S. at 290, 103 S.Ct. 3001. Appellant argues that a determination of the harshness of the penalty should include an evaluation of the financial condition of the person being subject to forfeiture.[3] To support this theory, appellant cites several forfeiture cases in other jurisdictions that suggest a possible evaluation of an offender's financial situation.

The district court agreed with appellant's argument. Under the first *Solem* factor, the district court found

> The vehicle forfeiture statute can produce disparate punishment because it affects individuals differently depending on their financial situations. Thus, on a case-by-case basis, several factors should be considered when determining the harshness of vehicle forfeiture, such as income, financial resources, liabilities, value of the vehicle, and owner equity. Such factors are important because they affect the harshness that results from vehicle forfeiture. For instance, vehicle forfeiture is likely to be harsher upon a low-income person than a wealthy person.

Minnesota Court of Appeals has utilized the three-part *Solem* test regarding an Eighth Amendment evaluation of vehicle forfeitures. *See, e.g., City of New Brighton v.2000 Ford Excursion*, 622 N.W.2d 364 (Minn.App.2001). We rule out an instrumentality test as the sole determination of excessiveness in an *in rem* forfeiture. However, an instrumentality, or a "nexus" consideration, may be combined with the *Solem* test. *See Riley*, 650 N.W.2d at 445.

*Miller v. One 2001 Pontiac et al.*, FP–01–9460 (Minn. District Court, Fourth District, March 8, 2002 at 2).

The court of appeals disagreed with the district court. It held:

> [T]he district court erred in assessing Miller's financial situation when applying the first factor of *Solem's* test for gross disproportionality. The Supreme Court in *Solem* clearly articulated that "[w]hen sentences are reviewed under the Eighth Amendment, courts should be guided by *objective* factors that our cases have recognized."

*Miller*, 655 N.W.2d at 16 (quoting *Solem*, 463 U.S. at 291, 103 S.Ct. 3001).

■ While the court of appeals was correct in pointing out that *Solem* does not explicitly call for a personal financial analysis, the first factor does not expressly preclude consideration of a defendant's financial condition in determining harshness. Without specifically deciding the extent that harshness can be measured by a defendant's unique financial situation, we conclude on the record before us that the district court abused its discretion in finding that a forfeiture of more than $1,000 was a violation of the United States or Minnesota Constitutions.

The second *Solem* factor compares the contested fine with fines imposed for the commission of the other crimes in the same jurisdiction. *Solem*, 463 U.S. at 291, 103 S.Ct. 3001. The court of appeals in this case held that "forfeiture of a $16,000

3. Appellant asks that this personal financial consideration be utilized as a new fourth factor, in addition to the three *Solem* test factors. We decline to alter the United States Supreme Court's test in such a manner. Alternatively, appellant asks that we consider personal financial condition within the framework of the first *Solem* factor.

vehicle is not excessive when compared to the maximum fine for a gross misdemeanor." *Miller*, 655 N.W.2d at 17. The district court did not utilize this factor.

In the present case, the value of appellant's vehicle was not much different than other vehicles, nor is it grossly different than other fines for crimes of a similar serious nature. For example, in addition to DWI convictions, Minnesota allows vehicle forfeiture for violation of Minnesota Department of Natural Resources statutes for the wrongful taking or shining of game or illegally transporting minnows. Minn. Stat. § 97A.225 (2002). The United States Supreme Court has recently emphasized that "[l]egislatures have extremely broad discretion in defining criminal offenses, and in setting the range of permissible punishments for each offense. Judicial decisions that operate *within* these legislatively enacted guidelines are typically reviewed for abuse of discretion." *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 432, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001) (internal citations omitted). Appellants forfeiture was not disproportionate to other forfeitures in Minnesota and was subjected to heightened protections of a criminal trial.[4]

Finally, the third *Solem* factor asks for a comparison of the contested fine with fines imposed for commission of the same crime in other jurisdictions. *Solem*, 463 U.S. at 290–91, 103 S.Ct. 3001. Such a comparison has already been extensively analyzed by the court of appeals which concluded that "many other states, in addition to Minnesota, subject a person's vehicle to forfeiture when such person has been convicted of several impaired driving offenses." *New Brighton*, 622 N.W.2d at 372. Appellant does not dispute this holding, but rather repeats her assertion that we should account for personal financial considerations.

We hold that the forfeiture of appellant's vehicle was not grossly disproportionate to the gravity of the offense. We further hold that appellant's forfeiture does not violate the Excessive Fines Clauses of the Minnesota or United States Constitutions and therefore affirm the court of appeals on the grounds stated herein.

Affirmed.

---

**4.** In addition to forfeiture, the current updated statute allows for a sentence of imprisonment of "not more than seven years, or to payment of a fine of not more than $14,000, or both." Minn.Stat. § 169A.24 (2002).