**Lisa N. BORGEN, Clay County Attorney, Respondent,**

v.

**418 EGLON AVENUE and $1,230.00 U.S. Currency, Defendant,**

**Santos Ramiro Martinez, Appellant.**

No. A05–1138.

Court of Appeals of Minnesota.

May 2, 2006.

Lisa N. Borgen, Clay County Attorney, Jenny M. Samarzja, Assistant County Attorney, Moorhead, MN, for respondent.

Craig E. Cascarano, Minneapolis, MN, for appellant.

Considered and decided by SHUMAKER, Presiding Judge; LANSING, Judge; and HALBROOKS, Judge.

## OPINION

HALBROOKS, Judge.

Appellant challenges the district court's order that he forfeit his house and any drug-related money found in the house as the result of execution of a search warrant. Appellant argues that the forfeiture is an unconstitutionally excessive fine and that the district court erred in finding that it met the gross-disproportionality and nexus tests. Because the forfeiture meets both the gross-disproportionality and the nexus tests, we conclude that it is not an unconstitutionally excessive fine. We therefore affirm.

## FACTS

Between November 2001 and August 2002, law enforcement investigated appellant Santos Martinez for suspected drug-related offenses. During that time, the police made eight controlled buys of cocaine from appellant at his house, obtaining a total of 15.1 grams of cocaine. The police then obtained and executed a search warrant for the premises. As a result of the search, law enforcement recovered an additional 6.6 grams of cocaine and $1,230 in cash, some portion of which was money from the controlled buys. The total value of the cocaine recovered as a result of the controlled buys and the search warrant was $1,500 or more.

The state charged appellant with multiple controlled-substance offenses. In addition, the state served appellant with a complaint seeking forfeiture of the $1,230 and appellant's house. Appellant was tried on a first-degree controlled-substance offense charge, but the trial resulted in a hung jury. Appellant then pleaded guilty to second-degree controlled-substance offense.

The district court conducted a bench trial on the forfeiture complaint and took judicial notice of the facts adduced at the trial for first-degree controlled-substance crime (sale) and from appellant's guilty plea to second-degree controlled-substance crime (possession). The parties also stipulated that appellant's home's tax valuation was $18,300. The district court ordered the property and money to be forfeited because it found that both the gross-disproportionality and nexus tests had been satisfied. This appeal follows.

## ISSUE

Does forfeiture of appellant's house and $1,230 in cash, as a result of the controlled-substance offenses, constitute an excessive fine in violation of the federal and Minnesota constitutions?

## ANALYSIS

■ The applicable forfeiture statute states, in pertinent part: "All property, real and personal, that has been used, ... or has in any way facilitated, in whole or in part, the ... exchanging of contraband or a controlled substance ... is subject to forfeiture." Minn.Stat. § 609.5311, subd. 2 (2004). But the statute places a limitation on the forfeiture of real property. "Real property is subject to forfeiture under this section only if the retail value of the controlled substance or contraband is $1,000 or more." Id., subd. 3(b) (2004).

The legislature made plain its intent behind the forfeiture statute by enacting a section that states its purpose. Minn.Stat. § 609.531, subd. 1a (2004), states:

> Sections 609.531 to 609.5318 must be liberally construed to carry out the following remedial purposes:
>
> (1) to enforce the law;
>
> (2) to deter crime;
>
> (3) to reduce the economic incentive to engage in criminal enterprise;
>
> (4) to increase the pecuniary loss resulting from the detection of criminal activity; and
>
> (5) to forfeit property unlawfully used or acquired and divert the property to law enforcement purposes.

Appellant contends that the forfeiture of his house violates the federal and Minnesota constitutions' protection against excessive fines. The two constitutional provisions are identical, stating, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend VIII; Minn. Const. art. I § 5. "Resolution of this issue requires interpretation of a constitutional provision[,] ... a legal question that we review de novo." State v. Rewitzer, 617 N.W.2d 407, 412 (Minn.2000) (citations omitted).

The United States Supreme Court articulated the gross-disproportionality test for use in determining whether a punishment violates the Cruel and Unusual Punishment Clause of the Eighth Amendment. *Solem v. Helm*, 463 U.S. 277, 292, 103 S.Ct. 3001, 3011, 77 L.Ed.2d 637 (1983). Following *Solem*, the Court adopted the gross-disproportionality test as a means of analyzing cases under the Excessive Fines Clause of the Eighth Amendment. *United States v. Bajakajian*, 524 U.S. 321, 336, 118 S.Ct. 2028, 2037, 141 L.Ed.2d 314 (1998). This test contains three prongs that the district court must consider: "(i) the gravity of the offense and harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Solem*, 463 U.S. at 292, 103 S.Ct. at 3011. But the test "is not whether the forfeiture is directly proportional to the sentence a particular defendant or claimant would receive for the offense committed, but rather whether forfeiture is *grossly* disproportional in the circumstances of the case." *United States v. One Parcel of Prop. Located at 32 Medley Lane*, 372 F.Supp.2d 248, 266 (D.Conn. 2005).

Minnesota courts previously used the instrumentality or nexus test, which asks only whether the property bears a close relationship to the offense. *City of Worthington Police Dep't v. One 1988 Chevrolet Berreta, Maroon in Color, Bearing License # 520 CLF & Bearing VIN # 1G1LV1412JE6227125*, 516 N.W.2d 581, 584 (Minn.App.1994). But after *Bajakajian*, the Minnesota Supreme Court adopted the gross-disproportionality test. *Rewitzer*, 617 N.W.2d at 414. While Minnesota courts may still use the instrumentality or nexus test to determine whether forfeiture is appropriate, it must be in conjunction with the gross-disproportionality test. *Miller v. One 2001 Pontiac Aztek, # GHS-186, VIN: 3G7DA03E41S500032*, 669 N.W.2d 893, 897 n. 2 (Minn.2003) (stating that to solely use an instrumentality test is inappropriate, but "an instrumentality or a 'nexus' consideration may be combined with the *Solem* test").

Although the Minnesota legislature provided that the forfeiture statute is remedial in nature, "the United States Supreme Court has stated that 'forfeiture generally and statutory *in rem* forfeiture in particular historically have been understood, at least in part, as punishment.'" *Schug v. Nine Thousand Nine Hundred Sixteen Dollars & Fifty Cents in U.S. Currency*, 669 N.W.2d 379, 382 (Minn.App. 2003) (quoting *Austin v. United States*, 509 U.S. 602, 618, 113 S.Ct. 2801, 2810, 125 L.Ed.2d 488 (1993)), *review denied* (Minn. Dec. 16, 2003). Moreover, forfeiture laws are "disfavored and will only be enforced when the claim is within both letter and spirit of the law." *Id.* (quotation omitted). Thus, due to "the punitive and disfavored nature of the forfeiture laws this court is to strictly construe its language and resolve any doubt in favor of the party challenging it." *Id.* (quotation omitted).

Forfeiture of one's house under this statute is a case of first impression in Minnesota, and we recognize that it has the potential to lead to a harsh result. But "large discretion is necessarily vested in the legislature to impose penalties sufficient to prevent the commission of an offense, and it would have to be an extreme case to warrant the courts in holding that the constitutional limit has been transcended." *Rewitzer*, 617 N.W.2d at 412 (quotation omitted). The legislature has clearly evinced its intent to use the forfeiture of real property as a method of enforcing the law, deterring crime, and decreasing the economic loss from illegal activity. Minn. Stat. § 609.531, subd. 1a.

### 1. Gravity of Offense and Harshness of the Penalty

The supreme court, in applying the *Solem* test, stated, with regard to the first prong, that "drug use and distribution is one of the greatest problems affecting the health and welfare of our population." *Rewitzer*, 617 N.W.2d at 414. Additionally, "[t]he Minnesota Legislature has targeted ... controlled-substance crime because of [its] social and economic impact and has set severe maximum penalties...." *State v. Kujak*, 639 N.W.2d 878, 884 (Minn.App.2002) (stating that "higher-degree drug crimes are [among] the most serious offenses"), *review denied* (Minn. Mar. 25, 2002).

The offense that appellant was convicted of is a grave one, as it is a high-degree controlled-substance crime. Although appellant was convicted of possession and not sale or distribution, the underlying facts from appellant's trial and plea, which the district court took judicial notice of, clearly reveal that he was selling cocaine out of his house. Thus, the effect of appellant's offense on the public renders his offense sufficiently grave.

It was permissible for the district court to consider the underlying facts of appellant's drug-sale activity although he was not convicted of a sale offense because forfeiture under Minn.Stat. § 609.5311 need not arise from a conviction. Minn. Stat. § 609.531, subd. 6a(a) (2004). Only forfeitures under Minn.Stat. § 609.5312 require an underlying criminal conviction. *Id.* For all other sections of the forfeiture law, a conviction is not required. And, under Minn.Stat. § 609.531, subd. 6a(a), a prosecutor need only prove forfeiture by clear and convincing evidence.

Federal courts have long been faced with the forfeiture of homes and have routinely upheld forfeiture, despite the harsh result. *See 32 Medley Lane*, 372 F.Supp.2d at 266–67 (stating that "[t]he Court fully realizes that the forfeiture of the ... home will have a profound impact on the entire family"); *United States v. 829 Calle de Madero*, 100 F.3d 734, 739 (10th Cir.1996) (stating that when "evaluating the harshness of the sanction, we recognize that this forfeiture will displace the Claimants' three minor children from their family home"). But "Congress concluded that when real property is used to facilitate the ... distribution of drugs, forfeiture—even of a family home—is appropriate, and this Court cannot say that in the circumstances of this case, the Constitution forbids that result." *32 Medley Lane*, 372 F.Supp.2d at 267.

The same can be said for the Minnesota legislature as it, too, has determined that forfeiture is appropriate when real property is used to facilitate the sale or possession of drugs. Minn.Stat. § 609.5311. Therefore, we conclude that forfeiture of appellant's house is not disproportionately harsh when compared to the severity of his offenses.

### 2. Comparison to Other Minnesota Crimes

In order to determine whether forfeiture in a particular case is comparable to fines imposed for other Minnesota crimes, courts look to the sentencing guidelines to determine what other offenses are of similar severity. *Rewitzer*, 617 N.W.2d at 414; *see also Kujak*, 639 N.W.2d at 884–85. Thus, the district court analyzes the severity level of the offense and looks at the penalties for other offenses at that level. *Rewitzer*, 617 N.W.2d at 414–15.

Appellant was charged with a severity-level 9 offense (sale) and charged with and convicted of a severity-level 8 offense (possession). *See* Minn. Sentencing Guidelines V (2004). Other offenses at those levels have maximum fines between $20,000 and $50,000. *See* Minn.Stat. § 609.2325 (2004)

(defining criminal abuse, a severity-level 8 crime when resulting in great bodily harm, and providing a maximum fine of $20,000); Minn.Stat. § 609.25 (2004) (defining kidnapping and providing a maximum fine for the most serious forms of kidnapping, severity-level 8 and 9 offenses, of $50,000). Thus, a total fine—between the house and the money—of $19,530 is not grossly disproportionate and is actually less than the permissible fine range. And even when

> the value of the property forfeited may exceed, even considerably, the fine range provided by the Sentencing Guidelines[, it] does not necessarily mean that the forfeiture is *grossly* disproportional.... [N]o mathematical formula will substitute for a careful assessment of all facts and factors and the application of sound judgment to what all must acknowledge is an "inherently imprecise" task.

*32 Medley Lane*, 372 F.Supp.2d. at 266 (citation omitted).

While we do not have other home-forfeiture cases in Minnesota to use in our analysis, we do have vehicle-forfeiture decisions for guidance. For example, Minnesota decisions have held that a forfeiture of a motor vehicle under the driving-while-impaired statute was constitutional despite the fact that the value of the vehicle vastly exceeded the amount of the maximum fine. *See Miller*, 669 N.W.2d at 898 (stating that "[t]he value of appellant's vehicle was not much different than other vehicles, nor is it grossly different than other fines for crimes of a similar serious nature," when the forfeited vehicle was worth $13,000 more than the maximum fine); *City of New Brighton v. 2000 Ford Excursion VIN # 1FMNU43S2YEA74156*, 622 N.W.2d 364, 371 (Minn.App.2001) (noting that "forfeiture is not excessive merely because the value of [the] car is higher than the maximum fines he might receive for committing similarly classified offenses. Under prior cases, forfeitures have not

been deemed excessive simply because the value of the car forfeited was higher than the fines authorized for similarly ranked offenses."), *review denied* (Minn. Apr. 17, 2001); *Lukkason v.1993 Chevrolet Extended Cab Pickup*, 590 N.W.2d 803, 808–09 (Minn.App.1999) (holding that due to the serious nature of DWI offenses, forfeiture of a vehicle worth more than $11,000 as a result of a gross-misdemeanor DWI offense was not excessive), *review denied* (Minn. May 18, 1999).

Additionally, appellant argues that the district court erred because it did not look at fines that were imposed on actual defendants solely within Clay County. But no court, including the United States Supreme Court, has analyzed this prong by looking at actual imposition of fines, but rather by considering what fines are permissive or allowable. Moreover, this prong is meant to compare the instant crime with other crimes in the same state, not just the same county. *See Solem*, 463 U.S. at 292, 103 S.Ct. at 3011. When the United States Supreme Court applied this prong, it looked at other sentences within the state of South Dakota, not the particular county in which the defendant was convicted. *Id.* at 298, 103 S.Ct. at 3013–14.

### 3. Comparison to Other Jurisdictions

This prong involves a comparison that is similar to the previous one, in that courts look to other jurisdictions for the penalties of similar offenses in order to determine proportionality. *Rewitzer*, 617 N.W.2d at 415. This includes the Federal Sentencing Guidelines, as well as other states' sentencing statutes. *Id.* (federal guidelines); *City of New Brighton*, 622 N.W.2d at 371–72 (other states' statutes).

The district court determined that under the Federal Sentencing Guidelines, appellant's offense would be categorized as a level–12 offense. The fines imposed for

offenses at that level range between $3,000 and $30,000. United States Sentencing Commission, *Guidelines Manual* § 5E1.2(c)(3) (2004). Thus, the district court stated that the $19,530 forfeiture is well within that range and does not suggest disproportionality.

Appellant again challenges the district court's methodology, arguing that it was improper to consider the federal guidelines because they are inapplicable to Minnesota and because the district court improperly analyzed the federal guidelines. We disagree. The district court properly considered the federal guidelines under this prong. *Rewitzer*, 617 N.W.2d at 415. Furthermore, the district court's methodology properly involved determining where a second-degree controlled-substance crime was ranked in the federal system and what fines were allowable for an offense with that ranking. We therefore conclude that the district court's methodology was proper.

### 4. Instrumentality or Nexus

■■■ Under the nexus test, a court considers " 'not *how much* the confiscated property is worth, but *whether* the confiscated property has a close enough relationship to the offense.' " *City of Worthington Police Dep't*, 516 N.W.2d at 584 (quoting *Austin*, 509 U.S. at 628, 113 S.Ct. at 2815 (Scalia, J., concurring)). Thus, "if the use of the property plays a significant part in committing an offense, then the property may be forfeited, no matter what its value." *City of Worthington Police Dep't*, 516 N.W.2d at 584. "[I]n Minnesota, an action for forfeiture is a civil *in rem* action. The property seized becomes the defendant, based on the legal fiction that it is the inanimate object itself, not its possessor or owner, that is guilty of wrongdoing." *Miller*, 669 N.W.2d at 896 (quotation omitted).

■■■ But a high standard must be met when the object of the forfeiture action is one that is pervasive and used for many activities, both criminal and non-criminal. *See Riley v. 1987 Station Wagon, VIN:1JCMT7840HTI07485*, 650 N.W.2d 441, 445 (Minn.2002). *Riley* involved the forfeiture of an automobile, and the supreme court stated that "[t]he use of the automobile in our society is pervasive. A car by itself is not contraband and there is little activity that the use of a car does not 'facilitate' to some degree." *Id.* (citation omitted). The court interpreted the term "facilitate" for forfeiture purposes to "require[ ] a direct and substantial connection between the [property] being forfeited and the designated offense." *Id.*

A similar analysis is applicable here because ownership of a house is also common in our society. Appellant's house was the instrument for his drug-sale operation and drug possession. While it is true that a house is not necessary to facilitate the sale or possession of drugs, the question is whether appellant used the house to sell or possess drugs. *City of Worthington Police Dep't*, 516 N.W.2d at 584. As the district court here stated,

> all of the alleged drug transactions took place at the house in question. The house was used both to store drugs in [appellant's] possession, and also to gain privacy for his drug transactions. The use of the house made the sales easier to conceal, as they could be kept out of the sight of the public.

Because we conclude that such use meets the "direct and substantial connection" requirement, the district court did not err by concluding that appellant's house was an instrumentality of his criminal activity.

### DECISION

Because forfeiture of appellant's house and money is not grossly disproportional

and because the house was an instrumentality of appellant's criminal activity, the forfeiture under Minn.Stat. § 609.5311 (2004) does not constitute an unconstitutionally excessive fine.

**Affirmed.**